17-6165 and 6195 U.S. v. Johnson and we've reversed the order of the appellant Napoli for reasons which will be obvious during the oral argument so ready to proceed? Thank you your honor and may it please the court Stephen Kreger on behalf of the United States. The district court erred when it 2255 motion for two reasons. First it concluded that based on this court's decision in Smith that section 649 was not divisible. Second it concluded that assault and battery on a police officer does not require at a minimum the attempted or threatened use of violent physical force. Looking first at the question of divisibility the district court will as I said relied on Smith but the modification of the modified categorical approach was unnecessary. It did so because it concluded that title 21 section 650.2 assault and battery or assault battery or assault and battery on an OJA official was categorically a violent felony under the residual clause. Post Johnson that's not available so the question is is the statute divisible? Mathis says look to state law to assault battery and assault and battery are separate convictable offenses. It did so in the case of Vontz v. State where it explained comparing the aggravated assault statute or the excuse me the assault and battery with the deadly weapons statute with the assault and battery with the dangerous weapons statute. There in 645 the assault and battery with dangerous weapons statute the Oklahoma legislature criminalized assault battery or assault and battery and the Oklahoma Court of Criminal Appeals explained that those were separate convictable offenses. Now in Vontz the court was addressing the separability of assault and assault and battery right not battery and assault and battery right and so it it it was a different issue than the divisibility of 649 B where we have the question of whether or not battery is a different offense than assault and battery. Well your honor the statute that it used for comparison title 21 section 645 says assault battery or assault and battery and it explained that those were separate the legislature had made those separate convictable offenses. This is to the extent there is some ambiguity there I would direct the court's attention to the uniform jury instructions specifically 4-1 which lists as an introductory instruction the different crimes and it lists three separate crimes for a violation of 649. It lists assault on a police officer, battery on a police officer, and assault and battery on a police officer. This is further confirmed by the uniform instruction 4-16 which is the uniform instruction for violation of 649. While those are separated by slashes in this court and Tiddy's explained that slashes could result would normally indicate means it lists assault next to battery and assault and battery and we know from the statute 649 A is misdemeanor offense 649 is B is a felony offense and so assault has to be a different offense than at least battery or assault and battery. Well would you agree that at least under Hamilton in the Hamilton panel's interpretation of Mathis it has to be clear in order to be considered divisible. Yes. Now your argument that assault would be a criminal offense under 649 A but not under B might create some lack of clarity with regard to the separability of battery in assault and battery but it's certainly not dispositive is it? Well. Because all your argument does is counter the very compelling argument under Tiddy's and under Hamilton. That because the instructions to the Ouija instructions say that the trial judge should instruct on all of these alternatives in which the evidence can lead to a finding of a criminal offense that the judge should instruct on each one of these options that are separated by slashes. So if you combine your point with the point that was made in Tiddy's and in Hamilton all that means is the judge should instruct on both assault and battery, battery and assault and if the only finding that is supported by the evidence for assault and not the other two options then it should be treated as a criminal offense under 649 A but if the evidence would support battery or assault and battery then it would be criminal offense under 649 A. And Judge Becker that's where I would point you to the notes on use because the notes on use explain you look at what the defendants charged with if the defendants, depending on what the defendants charged with and what's instructed to in the first element you give instruction 4-2 and or 4-3. Instruction 4-2 is the definition of assault. Instruction 4-3 is the definition of battery. So the defendant is charged with assault, you would give instruction 4-2 defining assault, and the jury would have to find beyond reasonable doubt assault. If the defendant was charged with battery, you would have to instruct the jury as the definition of battery and the jury would have to find beyond reasonable doubt that battery occurred. If the defendant was charged with assault and battery you would have to instruct both on 4-2 and 4-3, and the jury would have to find beyond reasonable doubt both of those occurred. Now it's possible that the state could ask for a lesser included offense of battery, and as the Court of Criminal Appeals has explained in various cases, that assault is a lesser included offense of battery, right? No, Your Honor. The Ouija instructions specifically say that assault is a lesser included offense of battery. I mean, the Ouija instructions are all over the map. I mean, if we're looking for certainty, I have a hard time saying how you're going to get it there. But go ahead, please. Well, Your Honor, if you look at – yes, I will agree. The committee comments suggest that assault might be a lesser included offense of battery. I don't suggest. They say it. But the committee comments are not law. Well, you were just spending, what, five minutes talking about the Ouija comments? I was addressing the actual uniform jury instructions and the notes on use. And that's different than the commentary? Yes, Your Honor. And in what sense? How is that law that the commentary is not? Well, the commentary is specifically addressed as the comments of the committee, not the comments of the court. And the usage, notes on use are what? How are they treated differently, and where is that explained? I'm uncertain on that. Does the Supreme Court have to approve these? The Court of Criminal Appeals, yes, Your Honor. They approve the criminal Ouijas. And what do they approve? Do they approve just the UJIs, or do they approve the UJIs and the notes, or do they approve it and the comments? What do they approve? They promulgate them all, but there is a recognition in the statutes in Title 12, Section 577.2, which is what authorizes the court to promulgate the uniform instructions, that they might not necessarily say what the law – might not always accurately describe what the law is. And what – I'm curious whether it's like the federal rules where the Supreme Court has to approve and it's a chance to veto, I guess you'd say, the rules, but the Supreme Court, I don't think, votes on the comments. They don't vote to approve the comments, just the rules. The Court of Criminal Appeals hasn't explained what exactly it votes on. The commentary is included in the attachment generally to the order adopting the uniform jury instructions. There's not a great explanation either in the legislation or in the order saying exactly what happens with the committee commentary. But we do know that under DeGear, Hamilton – well, DeGear, Hamilton, and Titties, each one of those panels in published opinions specifically relied on the instructions to the UJI instructions, correct? On the issue of divisibility. To the committee comments, I don't believe they relied on the committee comments. I could be incorrect on that. Can you tell me what difference does it make if you're convicted of assault and battery as opposed to being convicted of battery? Well, if you're convicted of assault and battery, what the Court of Criminal Appeals explained in cases like Parks v. State and Vineyard v. State is that assault is necessarily included in assault. What are the practical consequences? Is the sentence any higher? Does it affect recidivism? It's just an historical artifact that you have a separate offense of assault and battery. Is that correct? As opposed to just battery? I am uncertain why the Oklahoma legislature included both battery and assault and battery. The legislature could have included just battery, and I would suggest that under the Oklahoma case law and federal case law, this court should interpret what the legislature has done as creating two different things. Well, I thought you had already conceded in your briefs that simple assault and battery is identical to battery. The Court of Criminal Appeals has adopted a uniform jury instruction to that effect, Your Honor. So the answer would be yes. You do concede that simple assault and battery is identical to the common law offense or to the statutory offense in Oklahoma of battery. It would appear so. I would suggest there would be a valid argument that it should not be largely because  Correct. But if you have the exception, as you described in your brief, for simple assault and battery, then what do you do with the fact that the Ouija instructions in their comment, they say that in this I'm speaking now of 416, says that 649 is essentially an enhanced penalty for simple assault and battery, which means that in effect it's acknowledging that it fits into the exact category of the exception that you define in your reply brief. Well, Your Honor, so two explanations. First of all, as to the simple assault and battery, and this was explained by the Court of Criminal Appeals in Hall, whether you want to say it was a mistake or something, an anomaly, the legislature did not adopt a crime of simple battery. Here the legislature did adopt a crime of simple battery. That has to mean something. While the committee commentary, while the Ouijas can be instructive and can help clarify situations, they have to be read in context and have to be subservient to both the decisions of the Court of Criminal Appeals and actual cases as well as the statutes. Well, yeah. Well, we look at Steele if you want to be subservient, and Steele doesn't help you, does it? I would suggest that Steele does not address what corporal hurt means in assault. Steele is, the defendant in Steele was charged with assault and battery. Correct. When the court got to talking about the offense, it spoke of battery as if they were coterminants, that there is no difference between the two.  The definition of assault includes both with force or violence to do a corporal hurt. To conclude that a corporal hurt means a simple touching or an attempt at slightest touching would mean that force or violence and corporal hurt mean the exact same thing. Well, in Mason we rejected exactly the argument that you appear to be making in your brief now, which is to incorporate wholesale, essentially the definition of assault, into assault and battery. I mean, it doesn't necessarily follow that when you say that every assault and battery includes assault, that that means you're incorporating every aspect of the definition. Let's assume it does. Then Mason has a different view of what corporal injury or hurt, whatever word it is, uses in this context. So, I mean, why is this, why should we be more persuaded now than the panel was in Mason? Well, Your Honor, largely what the Mason panel relied on was common law definitions from other states. I would suggest there are two reasons why that's not appropriate. First of all, Title 25, Section 1, which is the definition act, general definition act for Oklahoma, says that where a term is not legislatively defined, it's given its plain and ordinary meaning. Mason acknowledged that the plain and ordinary meaning of corporal hurt would be bodily pain or injury. It rejected that definition in favor of definitions from other states. But the judicial backdrop that the Oklahoma legislature was legislating against in 1910 was Tyner v. United States. And in Tyner, what the Court of Criminal Appeals said, dealing with the territorial case, is that corporal hurt is not substantially different than violent injury. And if you have a situation in which the, again, going back to the Ouija, where we're talking about simple, and I'm talking about number 4-26, saying every battery, well, it says simple battery is also defined in Oklahoma in accordance with the common law concept. Now, if battery is defined in terms of the common law concept, why is it such a leap to say that assault is not as well? I mean, I don't understand why the explanation in Mason wouldn't make perfect sense here. The question would be, what common law? And the common law in Oklahoma at the time, the decision of the Court of Criminal Appeals that predates the assault in battery statute, predates assault, is that corporal hurt is not substantially different than violent injury. What I found very, you know, going back to Judge Bachreich's point about titties, what, you know, I commend you on your exhaustive analysis of Oklahoma law and trying to come up with an argument, but the reality is we need to be certain. I mean, your argument is based upon, it seems to me, a patchwork of sort of inferences that we should draw from what the legislature in 1910 did. I mean, how does it, I mean, that's not, I'm sorry, that doesn't give me certainty. I see that I'm over time. Can I make one quick response to that? This court, in addressing these issues, has gone back to cases over the century, over a century old, in determining whether a case is divisible and determining what interpretation to give. And in this instance, the assault, definition of assault has not changed. It has remained the same since 1910. If you lose the, and I'm not suggesting that you concede this issue. Obviously you don't. But if you lose the divisibility issue, do you lose your cross appeal? In other words, have you made an argument that we could still reverse the vacation of the enhancement based on, well, that's my question, is have you made an argument that would allow us to reverse if we determine that 649B is indivisible? Yes, Your Honor. In the fourth refund cross appeal, the government addressed this court's decision in the United States v. Garcia, which addressed New Mexico robbery. The New Mexico courts had said that the force necessary to commit robbery could be satisfied by the slightest touching. But the court then looked at all of the different robbery cases and concluded that it did not necessarily mean what it said. And what this court said is what the court actually does is more important than what it actually says. Here, the Court of Criminal Appeals in Armstrong v. State reversed even a simple assault and battery conviction. While the Court of Criminal Appeals in Steele said that wasn't due to the quantum force actually applied, it did say that it was because it was willful or unlawful. I would suggest that unlawful brought in the assault requirement. Because even Steele dealt with a grabbing, which this court in Garcia said was sufficient violent force. Thank you. Thank you. May it please the Court, my name is Kyle Wackenheim. I'm from the Federal Public Defender's Office for the Western District of Oklahoma, and I represent Darius Johnson. And if I could quickly go over the procedural posture of this case and why we're appellee. We originally filed a notice of appeal. Well, I think what's important to stress on that is what the government is attempting to do, and that is to send Mr. Johnson back to prison to resentence him. And to do that, the government is attempting to upend published decisions from this court as well as our understanding of what Oklahoma law has held thus far. The panel during the argument discussed certainty, and I know that this court, as well as many courts, have dealt with the frustration that has come in light of Johnson and what is violent and what is not violent. And frankly, I thought that assault and battery offenses from Oklahoma without more, say, a dangerous weapon or deadly weapon, that had been resolved. Those offenses simply did not qualify. And that is the operation of the sentencing courts, of defense counsel, prosecutors below. Well, to that point, I mean, following up on his Garcia argument, do you have one case where there was an assault and battery that involved where there was a conviction involving a slight touch-up? I do. Okay. What case is that? To get there, one of the problems we have is that the Oklahoma Court of Criminal Appeals doesn't publish a lot of its cases. But we do have a conviction discussed in a case that came before this court twice, Eric Cutts. The most recent citation is 702 Fed Appendix 661. That came here on a grant of Johnson relief for the exact same conduct. And from the original opinion back in 2011 on direct appeal, the court described what the assault and battery consisted of, which was, quote, reaching out from between jail cell bars and grabbing a female correctional officer by the hip in the buttock region. That was offensive conduct. It was against law enforcement personnel, and that was sufficient for a conviction under the exact same statute. And didn't Garcia say that certain grabbing could be violent conduct? Well, that's adopting Scalia's concurrence from Castleman into Garcia. Well, I mean, is Garcia a published opinion or is it not? It is, and that's something that does control this court. Yeah. But the verb grabbing, I mean, we can go back into the actual records to find out exactly what it is. It was originally charged as sexual battery. It was an attempt to touch. But you asked for an example of what I would consider to be nonviolent, unconsent and touching. Yeah, but we've said that that wasn't nonviolent. We've adopted the Scalia concurrence. So what you think that means is contrary to our precedent. Well, Scalia also identified that in footnote 5 of its concurrence, it singled out Oklahoma as a state that permits offensive touching outside the scope of Johnson. That's footnote 5 at page 1419. But Garcia says, look to what the courts actually do, and that is an example in cuts. What the government has attempted to do in this case is to import its own interpretation of Oklahoma law in contrast to interpretations from published decisions of this court. It began in Smith, a decision that came before Johnson, which the court squarely held that this type of offense does not qualify as a violent felony, but it did qualify under the residual clause. Mitchell took a look at assault and battery with a dangerous weapon and reaffirmed that simple assault and battery in Oklahoma does not require the level of force necessary under the Arms Career Criminal Act's force clause. Well, wouldn't Smith less than clear, though, it said it spoke in terms collectively of this statute clearly reaches behavior, which in theory, if you adopt the view that the government has, that assault and battery are different, then this statute reaches, it begs the question whether the statute is divisible, right? It does, and we believe that it is not divisible. Yeah, I get that, but the point I'm making is that Smith, I'm not saying Smith doesn't help you, but it doesn't seem to me that Smith answers the question, does it? Smith predated a lot of the jurisprudence that controls the court right now, but recent jurisprudence from Mitchell and Taylor speak to the question of divisibility. And Mitchell, of course, being an unpublished decision. Adopted in full by Taylor and quoted heavily from in Taylor. We have been fighting the divisibility argument in assault and battery cases from Mitchell through Taylor to no avail, but if we were to adopt the government's position here and assume that assault in the assault and battery offense adds something to the mix, then the question becomes, well, how do we, where's the certainty that this defendant who either pled guilty or is found guilty at trial that was convicted of battery or assault and battery when there's no meaningful distinction in published cases from the Oklahoma Court of Criminal Appeals and in the jury instructions? So that's another wrinkle that we would have to address should assault add something. Now, there's not, the government's argument is appealing in the sense that the statute does indicate assault and battery and battery. And what is the difference between those two separate offenses? Frankly, I think there isn't a difference. I'm not entirely sure why the legislature has identified two separate offenses of assault and battery and battery. I would address or at least direct the court to a jury instruction defining the assault and battery elements at Oklahoma Uniform Jury Instruction 4-26, which lays out the elements of assault and battery and importantly does not indicate any additional threat of force. It is willful, unlawful use of force or violence upon another person. Steele tells us what modicum of force is required and we also have an additional definition in 4-28 of the Oklahoma Court, excuse me, Oklahoma Uniform Jury Instruction that force can be any touching of a person regardless of how slight. Well, Oklahoma Jury Instructions 4-2, however, defines assault separately. Now, I mean, if I understand it correctly, the burden here in this harmless error context is on the government. That's right in your view, correct? Correct. Well, that's a good thing for you because it seems to me that it's not clear at all. What your argument suggests is somehow or other there's a conflation. Well, why is it that the Oklahoma Jury Instructions then break out assault, they break out battery, they have a separate instruction for battery, they have an instruction that splits it in with the little dash marks between assault, battery and assault and battery. That's a problem, isn't it? 4-2 and 4-3 define assault and battery? They do, including bodily injury, which would suggest something that's along the lines of Curtis Johnson, wouldn't it? I'm not going to concede that, but I would like to say that when it comes to what are the elements of assault, what are the elements of battery, what we have is the jury instruction that's controlling, which is 4-2-6, which gives what those elements are. The committee commentary- Why is that controlling as opposed to these separate instructions? I mean, I think what I understand the government's argument to be is you've got assault and battery. At least on its face, the common sense view would be that this combines essentially two offenses, battery and assault. Okay, well, we have a definition for battery, we have a definition for assault. It says bodily injury. The statute says corporal injury. Either one would suggest perhaps somebody's being injured, right? Looking to Oklahoma law, the assault merges into the battery. Whenever there's a battery, it necessarily includes an assault. And does that answer the question of whether the assault that merges into the battery involves corporal injury? As that term has been interpreted in Oklahoma case law in the committee commentary, it can be accomplished without the requisite level of force necessary under the Act because assault can be either a threat of an imminent battery or an attempted battery. And so the controlling battery from steel defines how much force is required, and the attempted battery does not require any additional level of force. The government has not cited a case, and I'm aware of none. But the threat is not dispositive, though, because, I mean, right under the ACCA, you can have a violent felony if you have a threat of violent force, right? Correct. Okay. So, I mean, that doesn't answer the question of whether the assault, what the force that's involved in assault is violent force. Maybe I misunderstood you. And I'm sure I misunderstood the question. The point that I'm trying to make, and if this doesn't answer your question, I'm not sure that I can, that assault, as defined in Oklahoma law, does not require that threat of injury because Oklahoma interprets assault under the common law definition as an attempted battery or a threatened imminent battery, which can include mere offensive touching. Okay. I get that. And the point would be that it is essentially, it's an attempted battery or a threatened battery. Battery doesn't include violent, could be an offensive touching. But I guess what one struggles with, then, is still the standalone definition for assault and what to do with this language of corporal injury and how those two things interact, right? Yes, that is one of the conceptual hurdles, I would say, to uniformity among Oklahoma jurisprudence. I would just ask you, I'm curious, on the question of divisibility, when you go back to the statute 649, I didn't see this really addressed in the briefs, but do you glean anything from subsection E on this whole question of whether it should be viewed as divisible or not? And specifically, that that's a section that talks about the fact that you would relate back to whether the officer had engaged in conduct that would have put him on duty. I found it sort of interesting that in that provision, the legislature only used the phrases assault and assault or battery. I mean, assault or assault and battery, and did not include battery. And I mean, I have a little inkling of what that might mean, but I wondered whether you had thought about that or had any thought on that. Frankly, I have not given that thought, but at first blush, it sounds like perhaps in that section, there was an understanding that assault and battery and battery would be duplicitous, and perhaps that's why it was separated between assault and assault and battery. I'd like to make a brief comment on the directions from the Oklahoma Uniformed Jury Instruction that controls this offense, referring back to 4-2, 4-3 as opposed to 4-2-6, which is the controlling assault and battery. I think taken in context, the assault and battery on a police officer has two major ways of committing that offense. One is an assault or battery or assault and battery. And then another is reaching for an officer's firearm at any point. And it was that distinction that I think the committee was trying to make, that in that second method, which I believe is subsection D, there is no need to instruct on assault and battery, but there is on the first. Now, why didn't the committee cite to 4-2-6? I don't have a satisfying answer to that. But a lot of this is unsatisfying. But what is clear is that this panel is somewhat bound by previous published decisions. I point to the plethora of cases cited in my brief that define simple assault and battery cases as not requiring the amount of force. And also there is a panel decision very recently addressing the very exact same arguments and rejecting those arguments. And I'm unaware of a situation. I know that's not controlling, but when, and perhaps this court is aware and maybe the government can point it out, where a panel of this court within months comes to a complete opposite conclusion of another panel on the exact same arguments with the exact same statute. And I submit for all of the reasons in our brief. You're talking about when the first opinion is an unpublished opinion. Correct. Yes, Mason. Sorry. The Mason decision. Mason controls, but it's not binding. It's well thought out. I'm not exactly sure why it's unpublished. I know it wasn't argued, but it was submitted on the briefs. I would note that Mason was granted relief. There was no rehearing sought. And for all these reasons, we'd ask this court to affirm the grant of 2255. Thank you. Thank you, counsel. Time has expired. Case is submitted. Counsel are excused.